```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**KATHY D. GOWER, individually and**
**as Administratrix of the Estate of**
**JOHN RANDALL GOWER, deceased,**

   **Plaintiff,**

**v.**        //   **CIVIL ACTION NO. 1:06CV154**
              **(Judge Keeley)**

**AIG CLAIM SERVICES, INC., and**
**AIG LIFE INSURANCE COMPANY,**

   **Defendants.**

## ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST

On July 20, 2007, after concluding that the defendants had improperly denied her claim for benefits under a group accidental death policy provided by AIG Life Insurance Company ("AIG"), the Court granted the plaintiff's motion for summary judgment. On the same day, the Court Clerk entered judgment in favor of the plaintiff, Kathy D. Gower ("Mrs. Gower"). As the prevailing party, Mrs. Gower now seeks her attorneys' fees, costs, and pre- and post-judgment interest.

### I. Attorneys' Fees

First, Mrs. Gower seeks an award of attorneys' fees in the amount of either $8,400 ($200 per hour for a total of 42 hours) or $23,333.33 (33 1/3% contingent fee of $70,000). Under Rule 54(d)(2) of the Federal Rules of Civil Procedure, a prevailing party may move for the recovery of attorneys' fees if the substantive law governing the action provides for the recovery of

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

such fees as an element of damages to be proved at trial. Fed. R. Civ. P. 54(d)(2). The Employee Retirement Income Security Act ("ERISA") provides for an award reasonable attorneys' fees to the prevailing party. 29 U.S.C. § 1132(g). However, unlike some federal statutes, ERISA establishes no presumption for the award of fees to a "prevailing insured or beneficiary." Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1028-29 (4th Cir.1993) (en banc). Rather, ERISA places the determination of attorneys' fees completely within the discretion of the district court. Id.

In exercising its discretion, the Court must consider five factors:

> (1) degree of opposing parties' culpability or bad faith;
>
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.

Id. at 1029.  "This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees."  Id.  Although a court has discretion to grant attorneys' fees to a prevailing party, the Fourth Circuit does not recognize a presumption in favor of granting attorneys' fees.  Id. at 1030.

With respect to the "bad faith" factor, Mrs. Gower asserts that every piece of objective evidence in the administrative record demonstrated that her husband's death was accidental; nevertheless, the defendants ignored that evidence and denied her claim for accidental death benefits.  In response, the defendants stated that, although Mrs. Gower may disagree with their decision to deny her claim, there is no evidence in the record that they denied her claim for an "ulterior or sinister purpose."

Under the first factor, the Court must determine whether the defendants engaged in culpable conduct or acted in bad faith.  Custer v. Pan American Life Ins. Co., 12 F.3d 410, 423 (4th Cir. 1993).  Mere negligence or error does not establish culpability or bad faith.  Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 641 (4th Cir. 1995).

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

During its investigation, Defendant AIG Claims Services, Inc. ("AIGCS"), the third-party administrator of AIG's accidental death policy, reviewed the following materials: (1) the Marion County Sheriff's Department Death Investigation Report, (2) a certified copy of Gower's Certificate of Death, (3) a toxicology report, (4) the West Virginia Office of the Chief Medical Officer's autopsy report, and (5) a number of medical and pharmaceutical records. The Marion County Sheriff's Department reported that Gower died in his bed during the night and that there was no evidence of foul play. Similarly, Dr. Zia Sabet of the West Virginia Office of the Chief Medical Officer performed an autopsy on Gower and classified the manner of death as an accident in the autopsy report. In conjunction with the autopsy report, the West Virginia Office of the Chief Medical Officer also prepared a toxicology report, stating that "[t]he narcotic analgesic, fentanyl, was detected in the blood at a high concentration," and concludes that "[r]espiratory and central nervous system depression would be expected and likely to be lethal."

Although Mrs. Gower asserts that the defendants ignored this "objective evidence," the record reflects that the defendants fully considered this information and concluded that the "objective

4

evidence" did not determine the specific cause of the high levels of medications in the decedent's system.  Specifically, the evidence did not indicate how this high concentration of medications could have accumulated in the decedent.  Therefore, the defendants obtained the expert opinion of an independent forensic toxicologist, Michael Slade, Ph.D., to fully understand the medications found in the decedent's system and try to determine why the decedent would have had such high levels of the medications in his system.

> In his report, Dr. Slade specifically concluded:
>> The fentanyl that was prescribed to Mr. Gower was contained in patches that are applied singly to the skin. Each patch is used for three days before it is replaced with a new patch; and that process continually delivers fentanyl to the patient for the relief of continuous pain at a rate that produces a therapeutic blood level. For the blood level to be at the toxic level that was present in Mr. Gower, then considerably more than the fentanyl present in a single patch was used.

Dr. Slade reasoned from this that Gower had deliberately applied the additional patches, thus exceeding his prescribed dosage of fentanyl.  Further, he determined that Gower's blood contained a toxic level of olanzapine (Zyprexa), a drug for which Gower did not have a prescription. Dr. Slade then opined that the interaction

5

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

between the toxic levels of fentanyl and olanzapine had caused Gower's death.  Accordingly, the defendants had a documented basis for its decision to deny Mrs. Gower's claim.

Prior to denying Mrs. Gower's claim, the defendants also obtained a legal opinion from the law firm of Spilman, Thomas & Battle ("Spilman") regarding whether a proposed denial of benefits would be appropriate under the Policy.  Mrs. Gower asserts that the defendants took positions in this action that were directly inconsistent with legal opinions provided by their own counsel.

Spilman, however, opined that, because Mr. Gower's behavior was reckless, AIG could make a "good faith argument that Mr. Gower's expectations were objectively unreasonable."  In considering the policy's "intentionally self-inflicted injury" exclusion, Spilman further explained that, while not adopted by the Fourth Circuit, several district courts from other circuits have applied a four-part test to determine whether there has been a "specifically self-inflicted injury." Spilman ultimately concluded that under this case law, "it is not [] difficult for AIG to argue that Mr. Gower had a general cognizance that his overuse of olanzapine and/or fentanyl could produce some injury," but

6

cautioned that "each of these cases arose out of the Fourth Circuit."

Based on Spilman's legal opinion, the defendants did not assert frivolous arguments in this lawsuit, but, instead, made good faith arguments on issues that the Fourth Circuit had not directly addressed. Significantly, the Fourth Circuit did not decide Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006), a case that defined "accident" in a similar insurance policy, until two months after Mrs. Gower filed this lawsuit. Therefore, the defendants' actions do not rise to the level of bad faith, but, instead, demonstrate mere negligence by misinterpreting the terms of the applicable insurance policy. Thus, the first factor does not support an award of attorneys' fees.

The second factor favors an award of attorneys' fees in this case and the parties do not dispute that the defendants have the ability to pay Mrs. Gower's attorneys' fees. The third factor, however, does not warrant the award of attorneys' fees because, as stated above, there is no bad faith conduct for which deterrence is necessary.

As to the fourth factor, Mrs. Gower sought only to benefit herself by filing this lawsuit. The Court's ruling, however,

clarified the meaning of key terms and provisions contained within AIG's accidental death policy to the benefit of all plan members. Thus, the fourth factor is neutral. Reinking v. Philadelphia Am. Life Ins. Co., 910 F.2d 1210, 1218-19 (4th Cir. 1990)(where plaintiff sued only on his behalf, but conferred a benefit on other plan participants by clarifying the interpretation of a term in a policy exclusion, the fourth factor did not weigh against an award of attorneys' fees).

The fifth factor concerns the relative merits of the parties' position. As stated above, at the time the defendants denied Mrs. Gower's claims for benefits, the Fourth Circuit had not decided Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006) as it relates to the term "accident" in a similar insurance policy. Likewise, the Fourth Circuit has not yet interpreted the self-inflicted injury exclusion that is also at issue in this case. Therefore, the defendants' arguments were not completely devoid of merit, but, instead, simply did not prevail in this case. Accordingly, a review of the five factors does not establish that an award of attorneys' fees is warranted in this case.

## II. LITIGATION COSTS

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

Next, Mrs. Gower seeks $4,655.72 in costs advanced by her counsel in pursuing her claim for accidental death benefits. Rule 54(d)(1) of the Federal Rules of Civil Procedure states:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' shall be allowed as of course to the prevailing party unless the court otherwise directs . . . .

29 U.S.C. § 1132(g)(1) also states that, at the termination of an ERISA case, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In construing these standards together, 29 U.S.C. § 1132(g)(1) allows the court to award costs recoverable under 28 U.S.C. § 1920. <u>American Medical Security, Inc., v. Larsen</u>, 31 F.Supp.2d 502 (D.Md. 1998)(awarding no attorneys' fees under the five-factor analysis in <u>Quesinberry</u>, but awarding costs under Rule 54(d)(1) and 28 U.S.C. §1920); <u>Hall v. Ohio Education Association</u>, 984 F.Supp. 1144 (S.D. Ohio 1997); <u>see</u> <u>also</u> <u>Alexander v. Winthrop</u>, _____ F.Supp.2d ____, 2007 WL 2071865 (E.D.N.Y. July 17, 2007). Thus, the Court will examine § 1920 to determine what costs Mrs. Gower may recover in this case.

In ERISA actions, an award of costs is limited specifically to those costs incurred in preparation for and during the course of

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

the litigation. 29 U.S.C. § 1132(g)(1)(providing for the recovery of costs of "action"). The award cannot cover any costs incurred in the prior administrative process. <u>Peterson v. Continental Cas. Co.</u>, 282 F.3d 112, 123 (2d Cir. 2002).

Mrs. Gower filed her claim for benefits on January 22, 2004, and AIGCS initially denied her claim on May 24, 2005. On June 7, 2005, Mrs. Gower, through her counsel, filed a notice of an administrative appeal, and submitted her expert's report to the appeals committee on September 14, 2005. The ERISA Appeals Committee of AIG affirmed AIGCS' denial of Mrs. Gower's claim on April 28, 2005. Thus, only costs incurred by Mrs. Gower after April 28, 2006 would have been incurred in preparation for and during litigation of this lawsuit. Accordingly, the Court will only award costs recoverable under § 1920 that were incurred after April 28, 2006.

Section 1920 sets forth the expenses that are generally recoverable by the prevailing party as follows:

> (1) fees of the clerk and marshal;
> (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) fees and disbursements for printing and witnesses;

(4) fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) docket fees under 28 U.S.C. § 1923; and
(6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Mrs. Gower, however, attempts to also recover costs for postage, long distance telephone calls and LEXIS NEXUS research. Costs reflecting postage and long distance telephone calls are incidental expenses of litigation, and, therefore, are not recoverable costs under Rule 54(d) or 28 U.S.C. § 1920. Moss v. ITT Continental Baking Co., 83 F.R.D. 624 (E.D.Va. 1979). Furthermore, costs for computer legal research are a factor to be included in attorneys' fees as opposed to ordinary costs. O'Bryhim v. Reliance Standard Life Ins. Co., 997 F.Supp. 728 (E.D.Va. 1998).

Therefore, Mrs. Gower's invoice includes the following recoverable costs:

| Date | Item | Amount |
|---|---|---|
| 9/12/2006 | Filing Fee | $155.00 |
|  | Service of Process | $ 40.00 |
| 4/9/2006 | Photocopies | $  0.60 |
|  | Total: | $195.60 |

There is no evidence that demonstrates that these costs are unreasonable. Accordingly, the Court awards $195.60 in costs to Mrs. Gower in this case.

### III. PRE-JUDGMENT INTEREST

Mrs. Gower also seeks an award of pre-judgment interest, accruing on January 22, 2004, the date she filed her claim for accidental death benefits, at the rate of 9.75% per annum. The defendants assert that an award of pre-judgment interest is not appropriate in this case because the time period between the denial of Mrs. Gower's administrative appeal and the Court's judgment was only 15 months. In the alternative, they argue that the pre-judgment interest should only accrue from April 28, 2006, the date on which Mrs. Gower's administrative appeal was denied, at the rate of 5.00% per annum because to impose interest at approximately 10% per annum from the date of her initial claims for accidental death benefits would be punitive in nature.

"ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." Quesinberry, 987 F.2d at 1030. Pre-judgment interest is not awarded as a penalty, but as compensation for the use of funds. Id. Considering the

totality of the circumstances of this case, the Court finds that pre-judgment interest is appropriate and will serve to compensate Mrs. Gower for the 15-month delay in receiving her accidental death benefits.

A cause of action under ERISA accrues when a fiduciary denies benefits to a participant; thus, pre-judgment interest on a participant's claim must also accrue upon the denial of benefits. Cottrill v. Sparrow, Johnson & Ursillo, Inc., et al., 100 F.3d 220, 223 (1st Cir. 1996); Larsen v. NMU Pension Trust, 902 F.2d 1069, 1073 (2d Cir. 1990). Applying pre-judgment interest upon the denial of benefits not only advances the general purposes of pre-judgment interest, but also serves ERISA's remedial objectives by marking a participant whole for the period during which the fiduciary withholds money legally due to the participant. See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 286 (2d Cir. 1992). Therefore, pre-judgment interest on Mrs. Gower's claim accrued on April 28, 2006, the date the ERISA Appeals Committee for AIG denied Mrs. Gower's administrative appeal.

The rate of pre-judgment interest is also left to the discretion of the district court. Quesinberry, 987 F.2d at 1031. In order to make Mrs. Gower whole, the Court awards pre-judgment

interest at the rate of 9.75% per annum, which is the applicable interest rate under West Virginia law. W.Va. Code § 56-6-31; Quesinberry, 987 F.2d at 1030-31 (upholding a district court's use of the applicable state rate). Accordingly, the Court awards pre-judgment interest on the benefit amount of $70,000 at the rate of 9.75% per annum and accruing on April 28, 2006.

### IV. POST-JUDGMENT INTEREST

"In contrast to the district court's discretion in the awarding of pre-judgment interest, federal law mandates the awarding of post-judgment interest." Quesinberry, 987 F.2d at 1031. The Fourth Circuit has interpreted the general federal post-judgment interest statute, 28 U.S.C. §1961, as applicable to ERISA cases. Id. The federal rate is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961. As of the date of entry of the Court's Summary Judgment Order, July 20, 2007, the applicable rate was 5.00%.[1]

---

[1] To calculate the applicable Post Judgement Interest Rate, see http://www.uscourts.gov/postjud/postjud.html and click on "current rate applicable." Of the two right-hand columns titled "Week Ending," choose the column for the Friday of the week immediately before the week when judgement was

**GOWER v. AIG**                                                                                  **1:06cv154**

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

---

Moreover, in the Fourth Circuit, the applicable rate of post-judgment interest applies to the entire amount of the judgment awarded – that is, the outstanding principal plus the amount of pre-judgment interest accrued on that principal as of the date of the judgment. Quesinberry v. Life Insurance Company of North America, 987 F.2d 1017, 1031 (4th Cir. 1993)(citing e.g., Drovers Bank v. Nat'l Bank & Trust Co., 829 F.2d 20, 23 (8th Cir. 1987)("contract interest was an element of money damages and 'post-judgment interest must be awarded on the entire amount of a judgment for money damages'"); see also, Edmonds v. Hughes Aircraft Co., 1998 WL 782016, *3 (E.D.Va. 1998)("In this circuit, post-judgment interest is calculated against the sum of the principal and the pre-judgment interest.")(citing Quesinberry, 987 F.2d at 1030). Accordingly, pursuant to 28 U.S.C. § 1961, the Court finds that post-judgment interest began to accrue on the total judgment on July 20, 2007 at a rate of 5.00% per annum.

### V. CONCLUSION

---

entered. Interest rates for the prior week are posted each Monday and reflect the rate of judgements entered on any day of the preceding week. The proper interest rate for any day that week is calculated by finding where the proper "Week Ending" column meets the "1-Year" row under "Treasury constant maturities." That rate stands regardless of whether judgement is paid in under or over a year.

     A February 28, 2001 memo from the Director of the Administrative Office of the U.S. Courts explains how to proceed with judgements and interest rates. The memo can be found at http://jnet.ao.dcn/Memos/2001 Archive/Dir1018.html.

15

GOWER v. AIG                                                    1:06cv154

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES, COSTS AND INTEREST**

For the reason stated above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Mrs. Gower's motion for attorneys' fees, costs and interest and **AWARDS** to Mrs. Gower:

- $195.60 in costs;

- pre-judgment interest on the $70,000 benefits amount at a rate of 9.75% per annum and accruing on April 28, 2006;

- post-judgment interest on the total judgment at a rate of 5.00% per annum and accruing on July 20, 2007.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record.

DATED: August 10, 2007

                                            /s/ Irene M. Keeley
                                            IRENE M. KEELEY
                                            UNITED STATES DISTRICT JUDGE